McCown and I'm appearing today on behalf of the plaintiff appellant Jeffrey Stanton, administrator of the estate of his late father Spencer Crumbly. As the court knows, this case involves a fatal shooting which occurred on the Crumbly property on December 17, 2017. There are four issues I would like to take up with the court today. First, whether there is a issue as to whether or not there is clearly established law that was violated. Third, whether the complaint pleads wrongful death claim is based on negligence and battery. And fourth, whether the defense of qualified immunity should be abolished or modified in some way. While I'm talking about the issues, I would like to tell the court that we are withdrawing our bystander liability claim against Officer Cornelius, so I will not be addressing that issue today. Turning to the issue of... Your only claim is against Officer Elliott? Trooper Elliott? Pardon? Your only remaining claim is against Trooper Elliott? That's correct, your honor. Okay, thank you. All right. As to whether or not they acted reasonably, the court... I'm sorry to interrupt you before you do this, but it's going to help me sort of maybe understand the argument a little bit better. I had a little hard time following exactly what looked like was happening based on the record. Can you describe for me, in as best detail you can, sort of when they get to the house? And is the house on the officer's left-hand side or right-hand side when he goes around the corner? When you get to the property, there are two structures there. There's the main building, the cabin on the left, and the A-frame on the right. And prior to the shooting, Mr. Crumley had been running from the cabin on the left toward the A-frame on the right. Now, he goes around the corner of the A-frame. Wait, when he goes around the corner, what side of his body is closest to the A-frame? His left-hand side. His left shoulder. Yes. Okay. So when he goes around his left shoulder, when the officer goes around the A-frame, I assume also the officer's left shoulder that's closest to the A-frame. Correct. Are they making a left turn? Yes. Okay. I'm sorry, Judge Richardson. No, no, please. I want to make sure I'm following. And then can you describe for me, because the A-frame is on my left. There's a couch. Is the couch against the A-frame, such that the longest side of the couch is against the A-frame, or is the short side of the couch against the A-frame? The officer is looking straight ahead at the end of the couch, and the long side of the couch is up against the A-frame. Okay. And that's off of his left hand? When he shoots, he is facing the couch. That's straight ahead. Okay. That's helpful just to have it in my own mind. You can go ahead. Thank you. The jury, if it gets to this, will have to determine where the first shot fell and the second shot. There are two shots. There's one to the right hand, and there's one to the back. And Trooper Elliott, when he was deposed, could not remember or say which shot was first. Now, there are a number of possible scenarios here. One is that the first shot was to the hand, which is a very serious injury which could have incapacitated Mr. Crumbly. There's a possibility that he was running straight ahead, posing no threat to anyone, and that's why he got shot in the back. Counsel, is the shot to the hand, is it in the back of the hand? Is the entry wound into the back of the hand, exit wound out of the face of the hand? As I recall, it enters the back and emerges from the palm. But I think the pictures show that, Your Honor. It is. The report says. Yes, thank you, Your Honor. That's the medical examiner's report. So he's not standing in front of him with his hands outraised, with his palms in front of him. He shot in the back of the hand, is what Judge Richards has asked. Well, it's hard to tell what his hands were like when he was originally shot because we don't know which shot was first, whether it was the hand or the back. The first shot might have spun him around. So it may be that he had his hands like this, or it may be that he didn't. That's something that the jury would have to determine. And then another possibility that the jury might find, based on the facts and reasonable inferences, is that Mr. Crumbly was rooting around in the couch, and then all of a sudden he turned around and faced the officer and got shot. And of course, that's what the defendant is arguing. And another possibility is that he was raising his hands. Mr. McCallum, my problem with this case is you're talking about possibilities. Aren't you simply asking the jury to speculate what happened? And on this record, where is the evidence that the officer acted in a way that violated your client's civil rights? Aren't you just simply asking the jury to speculate? Your Honor, if the jury can come to different conclusions, a reasonable jury based on the facts, reasonable inferences, there's a genuine issue of material fact. I think one of the facts that was very important, and I don't think that the lower court addressed it in the sense in which we argued it, is that there was no gun. The lower court correctly understood that she had a gun, but that wasn't really our issue. The issue was whether or not the absence or presence of a weapon made it more or less likely that someone engaged in the furtive conduct that was alleged, namely reaching into the couch and rooting around. And there was other circumstantial evidence. There were no cushions on the couch. So counsel, I guess I'm, maybe I'm, let me ask because I'm struggling a little bit, because I thought what you were going to say was, this isn't speculating. In response to Judge Urbanski's question, I'm not asking anybody to speculate at all, because the bullet went in his back, right? That fact, whatever testimony is, like the man was shot in the back, and that, you know, if Ann, so that's point one, and that's controversial, that he was in fact shot in the back. And two, is that if you shoot somebody in the back, that that is, that you cannot shoot somebody moving away from you in the back, right? That would be clearly established law. That's correct. So those facts alone would be sufficient for you to prevail. Yes, Your Honor. And then the speculation is not in that, which is your story, as I take it, but is instead your colleague, because what your colleague, what the, you know, your, the officer is asking us to speculate, or asking a jury to speculate, is that he got shot in the back, not in the way we would naturally think someone gets shot in the back, but instead by virtue of some sort of spinning movement that's, at least as described by the officer, more than a little hard to follow. That's correct, Your Honor. And his, the officer's argument will be that the gentleman was turning around to face him, and he continued to spin after he was shot. Now why he would continue to turn after he was facing the officer is not clear. Another, another point that shows up in the examiner's report is that the trajectory, not straight ahead as you might expect if he was standing up and the officer was shooting straight ahead. So there's certainly a basis for the jury to find. That would make sense if he's rooting around in the couch, right? Wouldn't he, wouldn't the standing up officer be above someone who's rooting around in the, in the couch looking for a gun? Well, he wouldn't have been turning in the right direction then. Right, because the officer says he turns and faces him before he shoots, but he doesn't shoot him while he's, while he's rooting around. He does not. He is standing facing him, raising his hand. So these are all, it's on page 89 of the record. He says, now when you say he was turning, his deposition, when you say he was turning, was this part of the turn that he was doing when he was turning from the couch? Answer. Turning towards me. Question. Towards you. Answer. Yes. So he doesn't say whether he's standing up or not. He says he was turning. And Judge Richardson, I may have missed it if he said that he was, he was standing up, but he was turning towards him. That's in the deposition testimony. Yes, your honor. But I agree with you, Mr. McCown. How is this in the, in the downward trajectory? That's, that's what the medical examiner's report says, your honor. Did you have any expert testimony with regard that, that you presented with regard to an affidavit or something to, to discuss how this couldn't have happened at the, as the officer described? Did you have any expert testimony? No. Counsel, just to follow up, excuse me, counsel, to follow up on that point. So tell me if this is a fair characterization of the evidence. We, we have physical evidence of the injuries to, to your client's father that, you know, are a shot in the back and a shot in the back of the hand. And if that's all you had, you could, you know, talk about a bunch of different ways, I guess that could happen. And we have the testimony of a, you know, of a witness who says, who describes events in a way and, you know, we can decide, I guess, whether that description, you know, is, is, is reasonable or unreasonable. But it, if you assume it's at least a plausible explanation of how those injuries occur, what the officer said, do you think it, the, you know, the, the, the injuries, the point of entries of the bullets, you know, which don't contradict that story, they might support another story, but there's no witness to say that story happened. Do you think that's enough to create a genuine issue of material fact? I think they do, your honor. And whether he's, and I appreciate, you know, your whole allegation is that you're, you know, is that the scene that, you know, was wrongfully killed. So, yeah, I realize that puts you in a difficult position to prove your case. But my real question is whether you, whether that's somehow an exception or, you know, to the requirement that you offer some evidence that, that would, you know, that would dispute the testimony of Officer Elliott. Your honor, the absence of a weapon goes to that issue. That makes it less. But how does that really, because I mean, he wouldn't have, would he have been able to realize that? I mean, from my view of the couch and the way you've described it, which, by the way, I appreciate that, what that helped us all out. But I mean, the kind of side of the couch, you know, it makes sense that he wouldn't have had a complete ability to determine it, you know, at least before he turned whether he had a weapon. And maybe the argument is, well, you know, he turned and you didn't, a weapon wasn't there. But, you know, given the events before that, that seems like, you know, a bit of a toll or a bit of a burden. So I'm, I'm having a little trouble with the significance of the lack of weapon. There are really two different issues here, your honor. One is whether or not the officer had a reasonable belief, although mistaken, that this person had a weapon. And the other one is whether or not he engaged in the furtive behavior that was described reading around the couch. The absence of a weapon makes that less likely. And if I may... But those are two, again, I mean, I don't, I don't want to convince you of an argument you're not making, right? But those are, they're two separate, like, theoretical claims here, right? One of your claims, it sounds like you're saying is, he didn't fear anything, because he wasn't making furtive movements. And the whole story from the officer is BS. Yeah. And, and that seems hard, right? Because I don't, it's hard to see exactly what the evidence for that is, right? You got the just don't believe him story. But the second argument that strikes me is an affirmative story, which is, no, my guy got shot in the back. Like, full stop. Like, that's the evidence is that I got shot in the back, not rooting around or anything else that I literally just got shot in the back. You're right, your honor. And some courts think that that's sufficient in itself to break a jury issue. And I see that my time has expired, unless you'd like me to address something else. Counsel, Mr. Mullins. May it please the court. My name is Michael Mullins, and I represent Troopers Elliott and Cornelius in this matter. I guess technically at this point, only Trooper Elliott, because it seems like the claims against Trooper Cornelius have been withdrawn here today. And as Mr. McCowan made his argument today, I think that he misses the point as to what the law is in a case like this. The issue is, could a reasonable officer have believed a reasonable officer in the same position as Trooper Elliott? Could he have believed that existed, that Mr. Crumbly presented a threat to that officer? And what Mr. McCowan was saying, and I tried to write this down, was that if a jury could have come to a different conclusion than Mr. Elliott, then Mr. Elliott should lose this motion for summary judgment. And that's not what the law is. The law is not whether or not a jury could come to a different conclusion. The law is whether a reasonable officer in the same shoes as Trooper Elliott could have come to the same conclusion. It's an objective, reasonable standard. And when you look at- But counsel, don't those two things kind of come together with the law that interprets the principle I think accurately described with the clarification that you cannot have a reasonable fear that justifies shooting if the officer at least has his back to you unless he's doing- I don't know the right word- unless the individual that's back to you is doing something else. Certainly if he's running away. I mean, so I think that's the point is, and maybe I'm getting it wrong, I don't want to speak for your colleague, but I think his point is you can't by law have a reasonable fear if Mr. Crumbly is running away or has his back turned. And he got shot in the back, which shows he was when his back was turned. And so that's where there's some issue about whether your client's testimony can be viewed as sufficiently uncredible in light of the physical evidence. And I appreciate the question, Your Honor. And I think that you have to look at the totality of the circumstances when you're evaluating a Fourth Amendment case like this. And you have to put yourself in the officer's shoes on this day in question. And you have to recall that they were told that this guy was armed by the son and the daughter. And the decedent himself told these officers that he was going to get a gun and he was going to shoot them. And he was running back toward the house where he said that he had that gun. And so when you put yourself in the officer's question, maybe this is a way of asking. So assume all those things. And assume the officer said, you know, he said he said that he's got a gun in the house. And so the guy just, but you know, he crumbly just runs toward his house. And as he's running away, the officer says, I don't want him to get to his house because that's going to make more work for me. And so I'm going to shoot him in the back. Right? And I'm, you know, just pull the trigger and shoot him. Right? That wouldn't be a permissible shoot, right? I would agree, your honor, if he was merely running back toward the house where he said that he had a gun. Right. So the point of that is, is that all of these things that come before doesn't change the fundamental question of whether he shot the guy in the back as he's running away, which is, you know, plausible under the evidence. Right? Or what the officer says is true. Right? You know, which was that he shot at him center mass, but there was some sort of spin that he can't articulate or describe very well that allowed him to end up being shot all the way in the back. Right? I mean, all the way turned around. I mean, that that's the part of it to me that's hard is, you know, we've got to take the the spin story that your client gives and combine it with the shot in the back evidence and say, you know, in essence, no reasonable juror could conclude that anything happened other than what the officer described. And your honor, when you when you look at what I believe it was Judge Urbanski pointed out on page 89 of the record, what Super Elliot said was that he was turning toward him when he shot. And I think that that makes sense with this testimony. He's turning toward him from, you know, he basically has back to him. And he thinks that he's getting a gun because he promised that that's going. And if he's turning toward him, he shoots him. And then one of those shots ends up in his back. I that I think that makes sense. But when you think about what he did, he doesn't seem to. All right. I mean, Nick, so so you turn the opposite way from which the way I would have turned. But the right. I mean, the oddity. I mean, you've got him turning literally. You've got him not turning toward him at all. You've got him turning his back to him. Right. He's out of cash. Turn a 180. Right. I mean, you just to make your story make sense. Counsel, you literally turned a 180, which is not if I look at Jay 307, which is page 122 of the deposition. He says he turned toward me. Right. Where was he turning towards you? What was it? Center mass? Yeah. And it go in. I mean, that's what I'm having trouble getting my head around. Counsel is what do I what do I do with with that? I mean, I understand that you have a plausible story. Maybe it's a 180 story or maybe it's what he says. His momentum carried him around and I hit him and he just kept turning. Well, he couldn't. I mean, if he hit him and then he kept turning. I'm not sure what that means. Anyway, it's hard for me to understand what your client's suggesting here. But how do I take that and conclude that the only factual conclusion here is that he was shot in a spin and not in the back? Again, your honor, I think that someone can turn towards you by turning this way toward you or this way toward you. There's two different ways that you can turn. If you have your back towards someone, you know, because here's the thing with the left to face them. No, because he's facing the A-frame and the couch. This is why the discussion about the A-frame and the couch matter. He's facing the A-frame in the couch. Right. And the officer is coming to his left hand side. Right. Around the A-frame. So he's on my left hand side. I'm facing the A-frame. Right. I can either turn 45 degrees to the officer, which is what the officer says happens, or I can turn 270 degrees around to go back to the officer. Right. You're trying to get him to turn 270 degrees around. He's doing the pirouette like before he gets shot. I mean, that makes sense to me. Yeah. And I don't think that the officer was asked or he articulated whether he was spinning right or left when he faced him. What I think the officer articulated was that he was reaching towards something and that he thought that he was making good on his promise to get a gun. And I think if you look at the decisions that this court has made in similar situations, and I would point the court to the Milstead versus Kibler case, an officer is entitled to qualified immunity when he makes a mistake of law. Here we know, or a mistake of fact, here we know in hindsight, which is 2020, which is what the plaintiff's counsel wants the court to apply here and what the court's not supposed to apply in one of these cases. We know that Mr. Crumbly was not armed, but we have to put ourselves in the position of the trooper at the time the trooper made the decision to shoot. And he's entitled under the law to make a mistake whether or not he was armed. And I think that's what we have here. There's a whole series of these. Right. It's totally fine if he thought he had a gun and he didn't. Right. The challenge I've got is that his testimony doesn't seem to match up with what you're describing. Right. He says, where did you, where were you aiming? Center mass, which is where? The middle of the chest. Right. And then he goes on to talk about, well, if you were aiming at his center mass, how in the world did you hit him in the back? Right. And he says, well, I don't know. He was hitting. He kept turning. I believe. Uh-huh. I don't. Right. I mean, and then he does say when he was turning, was this part of the turn from the couch? Yes. Toward me. Right. Which suggests he's turning to the left, not to the right. But he's turning toward me, not around behind me. Man, I'm having a hard time understanding. And then I go back to the basic premise is that it's your burden to show that there's no material facts in dispute here. And it sounds like to me, like all I can describe are facts that I don't understand. And your honor, I appreciate your question. And I still come back to he's allowed to make a that would demonstrate that he was shot while his back was turned first. There were multiple shots. We know there were multiple shots that didn't hit Mr. Crumbly. And we know that the trooper says that he was turning when there were when the shooting was going on. And anyone that's ever shot a pistol knows that it's not as easy to hit things as people think that it is to hit things when you're aiming at them. And this is especially true when you have a fear for your life. And so we don't know whether he was shot with whether the bullet that hit him was the first shot, the second shot, the third shot. We don't know which which and we don't know where he was hit in sequence when when he was shot. What we do know is that Mr. Crumbly made threats to his daughter. We know that Mr. Crumbly made threats to his son. We know that Mr. Crumbly made threats to these troopers. We know that Mr. Crumbly was retreating towards his house where he said that he had a gun and that this trooper reasonably believed and and that's the issue that the that the four circuits laid out. He had a reasonable belief that there was probable cause to believe that he was in danger and that's why he shot because he reasonably perceived that he was about to get shot and and the four circuit law was clear that a police officer doesn't have to wait until he sees that gun to to to fire. He doesn't have to wait until the other person shoots to fire. If he has a reasonable belief that he's in danger he's allowed to fire and that's what what we believe that was established below and what we believe that the district court judge relied on in granting trooper Elliott summary judgment in this matter. Is is your client's description of the events in this case and and and the turning and all is that supported by any expert testimony as to how this turn may have happened and and how the bullet wound could go and in this particular case back to front right to left and and downwards. Did you have any expert testimony? Neither party had any expert testimony in this case. The only thing that would come close to an expert report would it be the the medical examiner's examination which is part of the record. There was no ballistics expert hired by either party. There was no use force expert hired by either party. There was no medical expert hired by either party. So so council let me follow up with something. So look at it the same way. I mean I think it's fair to say he could have turned either way. I don't think the testimony gives us one indication one versus the other but at some point it does say he got to a point where officer Elliott was able to at least attempt to shoot front center and so he gets around to facing him one way or the other and yet we know he shot in the back and and so and I understand your client's explanation. I understand he quite frankly can't be extra precise given the all the you know chaos and you know you know difficulty of the moment so I'm not being real critical of that. He's given his account which arguably is which I think let's assume is consistent with the physical evidence. You know but we got physical evidence that at could be consistent with your with your client shooting Mr. Crumbly in the back when there was no danger or at least no danger that the courts have recognized to be sufficient. It seems to me I mean it does does does a plaintiff kind of have to rely on the fortuity of a witness who happens to see or take a video or something but or isn't physical evidence that's capable of an alternative explanation enough and speak to that because I granted we got we got physical evidence that could go one of two ways at least one of two ways. You got your client testify in a way that I think is consistent with that. We don't have any other witnesses but the physical evidence itself could be consistent with another alternative. I mean why is it bad enough why do they have to have a witness when in this case their allegation is that he was wrongfully you know killed and you know that it I'm not agreeing with that one way or the other but that takes away the other potential witness. Okay and I think I understand your question and I think that that comes back to the qualified immunity standard and the fourth amendment standard where you have to put yourself in the shoes of an objectively reasonable officer in the same situation as the officer found himself here and that you can't go back and judge these cases with 20-20. Sure and that may be true but but but doesn't doesn't that law to to put ourselves in that situation that situation needs to be that um that that Mr. Crumbly's back's not turned to him when he first shoots. Is that right? I don't necessarily think that's right. I think that his back could be turned to him when he first shoots if that officer still had an objectively reasonable belief that while his back was turned to him he was trying to access the gun that he told him he was going to go get and shoot Trooper Elliott with and so I think that's that's an extra layer of of of of undisputed facts in this case that that is important to to to realize. It strikes me that that's this that's the speculation right so in response to Judge Quattlebaum's question you're like well maybe I mean maybe he had his back to him when he was looking for the gun right but but no you know that's that is contrary to your own client's testimony right and so I don't know how you get to make that argument. Well I don't think that that's necessarily contrary to what my client said happened. You have this uh it's it's what I would call a patio uh because it's not elevated but but you have the a the a-frame he had been entering into a different door in the a-frame when he was going back and forth to the house earlier then he comes around to kind of a a door that's on the side where where the trooper loses sight of him for a moment and you have a couch that is running what I would describe as long ways with the a-frame and so he's you know in that situation unless you know this is a fluid situation and something that's moving quickly and rapidly evolving like the like the courts evaluate well that situation someone could kind of have their back to you they can kind of be uh to your side as well uh at the same time you know if you're if I'm like this my back is perfectly to you if this is the where the couch is and I'm like this well my back's kind of to you but so is my my side and so right but the problem is the right and comes out the left or you know ends up on the left side right so as you just described it your story would make sense if the bullet entry was on the left back moving to the right front but it's the opposite that's the challenge that I've got and I understand there's no there's no ballistic expert here right but but your the way you just stood makes sense if the bullet entry is on the left side but it's really hard to understand how the bullet entries on the right side moving to the left in the move you just made right well and again that is I understand that but but it depends on whether you're turning this way or you're turning like you explained earlier judge Richardson in a 270 degree angle it also depends on when the bullet struck him with in the sequence we know he fired multiple shots in a quick quick amount of time and that the decedent was was turning at the same time judge Richardson his time is almost up can I ask one more question please please as much as you like um here's what troubles me Mr. Mullins is that in looking at the in this case the order granting the payments motion for summary judgment the district court judge doesn't mention the shot in the back that it's just it's not part of the calculus if you look at page 460 I'm looking at page 460 of the joint appendix the head and defendant Elliot is entitled to judge a matter of law and count you know I love district judges but in this particular case um um when when the district judge is considering the facts of this case I don't see any assessment that the decedent was shot in the back and if you look on page 14 well of the opinion 464 of the appendix the district court says given the totality of circumstances any objectively reasonable officer could easily have believed that the seating probably presented an immediate threat justifying the use of deadly force well you know for all the stuff leading up to cutting around the corner of the a-frame all that's true enough right but what the opinion doesn't address what the opinion doesn't address is the shot in the back the opinion doesn't address the forensic evidence and in cases like this I think the law okay my brethren who are uh on the fourth circuit regularly will tell me but I think the law is in cases like this where there's there is no no other testimony other than because someone died there's just one witness's testimony that the district court is required to do a critical assessment of the forensic evidence so what troubles me here is that there's no consideration of the and your honor I'm unaware of a fourth circuit case that that requires the court to do a critical evaluation of the forensic evidence it's called Engel versus Yelton and and it and it says he your your good colleague there Mr. Judge Urbanski just quoted it for you right a court must undertake a critical assessment of the forensic evidence he quoted it and apologies then for for not uh recognizing that but this was raised below by uh Mr. Crumbly as this whole argument about the the ballistics and the lack of experts with the ballistics but this issue was raised below and so I think that one has to assume that the judge considered it whether or not it was placed in in in uh the four corners of the written order uh you know I I can't it wasn't but but one I think has to assume that if it was raised that it was considered by the court thank you for that answer Mr. Mullins you're welcome if there aren't any more questions I am uh out of time and I will uh yield and just ask this court to uh affirm the lower court's decision uh and in its consideration of this de novo to determine that that there was either no violation of law or that qualified immunity exists thank you Mr. McAllen you got a few minutes I have nothing further unless the court has additional questions for me judges anybody have anything for me I do not thank you well as as you know we would love to come down and shake your hands and thank you in person uh but we're not uh able to do that in these times but no we do appreciate all of your help and we'll take the case under advisement
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Michael F. Urbanski